444 So.2d 1128 (1984)
FLORIDA FARM BUREAU CASUALTY COMPANY, Appellant,
v.
Lacy R. BATTON, Sr., A.O. Glenn, D/B/a Glenn Electric Services, Inc., and the Department of Highway Safety and Motor Vehicles, Division of Florida Highway Patrol, et al., Appellees.
No. 82-1299.
District Court of Appeal of Florida, Fourth District.
February 8, 1984.
*1129 Ronald S. Fanaro of Bernard F. Grall, Jr., P.A., Vero Beach, for appellant.
Michael Jeffries of Neill Griffin Jeffries & Lloyd Chartered, Fort Pierce, for appellees.
ANSTEAD, Chief Judge.
Florida Farm Bureau Casualty Company appeals the granting of summary judgment to the State of Florida in Florida Farm Bureau's action for contribution.
Lacy R. Batton, a general contractor, bid on a contract to construct a radar equipment and standby generator shelter for the State of Florida, Department of Highway Safety (State). Batton's bid was accepted and as part of the contract Batton executed an indemnity agreement which provides:
The contractor agrees to indemnify and save harmless, the purchaser, their agents or employees, from and against all loss or expense (including costs and attorneys' fees) by reason of liability imposed by law upon the purchaser for damages because of bodily injury, including death, at the time therefrom, sustained by any person or persons, or damage to property, including loss or use thereof, arising out of or in consequence of the performance of the work, whether such injuries to persons or damage to property is due or claimed to be done to the negligence of the contractor, his subcontractors, the purchaser, their agents or employees, except only such injury or damage as shall have been occasioned by the sole negligence of the purchaser.
Batton then hired A.O. Glenn to do the electrical work, which included the wiring of an overhead exhaust fan in the shelter.
Batton subsequently injured his hand while he was inspecting the exhaust fan and sued Glenn and his insurer. A jury found Glenn negligent and assessed damages. Glenn and Florida Farm Bureau then filed a third-party action for contribution against the state as a joint tort-feasor for negligent failure to provide a warning or to require a screen guard on the exhaust fan. Thereafter, the state sought and received a summary judgment on the contribution claim on the grounds that the state, by reason of the indemnification agreement with Batton, had no common liability for Batton's injury.
The common law doctrine precluding contribution among joint tort-feasors was abrogated by the legislature's enactment of section 768.31, Florida Statutes (1975), the Uniform Contribution Among Tortfeasors Act. See Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975). So long as the parties have a common liability to the injured person it is no bar to contribution that liability of the parties rests on different grounds. Farmers Insurance Exchange v. Village of Hewitt, 274 Minn. 246, 143 N.W.2d 230 (1966); Armor Elevator Co. v. Elevator Sales & Service, Inc., 360 So.2d 1129 (Fla. 3d DCA 1978). But where one tort-feasor is immune from suit by the victim, the others cannot compel contribution because the alleged tort-feasors are not then jointly and severally liable. Armor Elevator Co., 360 So.2d at 1129.
In Seaboard Coast Line Railroad v. Smith, 359 So.2d 427 (Fla. 1978), the dismissal of Seaboard's claim for contribution from the West Robinson Fruit Company was affirmed. Employees of the fruit company were injured when the company bus collided with a Seacoast train. The employees' injuries were paid for by the employer under the provisions of the Workmen's Compensation Act without regard to fault. See § 440.11, Fla. Stat. (1975). The railroad *1130 could not compel contribution by the employer who, because of the special nature of workmen's compensation, was immune from suit by his employees and, therefore, not judged to be a tort-feasor. See also Armor Elevator Co., 360 So.2d at 1129. The state compares its situation to that of the railroad in the Seaboard case. Specifically, the state asserts that since the indemnity agreement with Batton would prevent Batton from recovering against the state directly, the agreement should also bar a contribution recovery.
Florida Farm Bureau contends that this case is closer to that of Paoli v. Shor, 345 So.2d 789 (Fla. 4th DCA 1977), aff'd, 353 So.2d 825 (Fla. 1977). Mrs. Shor was driving an automobile that was involved in an accident with Paoli. Mr. Shor, a passenger, was injured; he sued Paoli and won, but he was precluded from suing his wife because of interspousal tort immunity. Paoli sought contribution from Mrs. Shor. The trial court rendered judgment on the pleadings against Paoli. In reversing, this court found that the right of Paoli to sue for contribution was not affected by the fact that Mrs. Shor was the spouse of the injured party and, therefore, immune from a direct action. The majority opinion reasoned that no harm was done to family harmony and that denying Paoli the right to seek contribution would be unfair to him and a windfall to Mrs. Shor. Similarly, in Salley v. Charles R. Perry Construction, Inc., 403 So.2d 556 (Fla. 1st DCA 1981), the court validated a crossclaim for contribution by an architect against a general contractor on the theory that they were involved in a common enterprise.
For purposes of analysis, we assume, as the court did below, that the state and the subcontractor were joint tortfeasors who negligently injured the general contractor. Under the indemnity agreement the general contractor agreed to indemnify the state for all negligence liability except that caused solely by the state. Cf. Mitchell Maintenance Systems v. State of Florida, Dept. of Transportation, 442 So.2d 276 (Fla. 4th DCA 1983). If a third party had been injured by the state and the subcontractor, the subcontractor would clearly have been able to seek contribution from the state. The state in turn could have sought indemnity from the general contractor for the state's share of the liability.
In the present case, utilizing the same reasoning, the subcontractor should also be able to seek contribution from the state. The subcontractor was not a party to the indemnity agreement and ordinarily would only be liable for his share of the liability. On the other hand, the general contractor, by entering into the indemnity agreement may ultimately be forced to repay the state a portion of the damages he recovered from the subcontractor. While at first blush this may seem unusual, it is simply the natural consequence of the contractor's agreement to indemnify the state for injuries to any person on the job except those injuries caused solely by the state's negligence. The agreement does not limit the description of "injured party" and would appear to provide for indemnity even though the contractor himself is the injured party.
In our view, this situation is unlike those in which a tort-feasor is prevented from recovering from a joint tort-feasor due to a legal immunity, such as worker's compensation. The indemnity agreement here does not provide immunity from suit by a joint tort-feasor. Rather, the agreement forces the contractor to assume liability where the state, as a joint tort-feasor, is held partially responsible for an injury. The subcontractor's rights to contribution should not be impaired by such a private agreement. In summary we conclude that the state is open for suit for contribution and the enforcement of the indemnity agreement is a separate issue to be litigated between the state and the injured contractor.
Accordingly, the final summary judgment is hereby reversed and this cause is remanded for further proceedings in accord herewith.
BERANEK and DELL, JJ., concur.